CHRIS M. AMANTEA (SBN 147339)
  camantea@steptoe.com
CHRISTOPHER W. SMITH (SBN 256494)
  csmith@steptoe.com
STEPTOE & JOHNSON LLP
633 West 5th Street, 7th Floor
Los Angeles, California 90071-3500
Telephone: (213) 439-9400 / Facsimile: (213) 439-9599

ANTHONY G. HOPP (*pro hac vice forthcoming*)
  ahopp@steptoe.com
STEPTOE & JOHNSON LLP
115 South LaSalle Street, 31st Floor
Chicago, Illinois 60603
Telephone: (312) 577-1300 / Facsimile: (312) 577-1370

Attorneys for Plaintiffs E.R.E. VENTURES, LLC, E.R.E. LLC, and KANGARU
ENTERPRISES, LLC d/b/a RUSACK VINEYARDS d/b/a SANTA CATALINA
ISLAND VINEYARDS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.R.E. VENTURES, LLC, a Delaware limited liability company; E.R.E. LLC, a Delaware limited liability company; and KANGARU ENTERPRISES, LLC, a Delaware limited liability company, d/b/a RUSACK VINEYARDS d/b/a SANTA CATALINA ISLAND VINEYARDS, <br><br> Plaintiffs, <br> vs. <br><br> DAVID EVANS AND ASSOCIATES, INC., a Oregon corporation; HALL & FOREMAN, INC., a merged out California corporation; LANGAN ENGINEERING & ENVIRONMENTAL | Case No. <br><br> COMPLAINT FOR: <br> 1.  Cost Recovery under CERCLA; <br> 2.  Declaratory Relief under CERCLA; <br> 3.  Cost Recovery and Indemnity under HSAA; <br> 4.  Breach of Contract; <br> 5.  Express Indemnity; <br> 6.  Private Nuisance; <br> 7.  Trespass; <br> 8.  Negligence; <br> 9.  Equitable Indemnity; and <br> 10.  Declaratory Relief <br><br> DEMAND FOR JURY TRIAL |

DOC. # DC-9837818 V.1

SERVICES, INC., a New Jersey
corporation; CHRISTOPHERHILL
DEVELOPMENT, INC., a California
corporation; KOLOA PACIFIC
CONSTRUCTION, INC., a California
corporation; TERRAPACIFIC
CONSULTANTS, INC., a Nevada
corporation; and DOES 1-10,
Inclusive,

                   Defendants.

Plaintiffs E.R.E. Ventures, LLC, E.R.E. LLC, and Kangaru Enterprises, LLC d/b/a Rusack Vineyards d/b/a Santa Catalina Island Vineyards (collectively, "ERE"), by and through their attorneys, Steptoe & Johnson LLP, against Defendants David Evans and Associates, Inc., formerly d/b/a Hall & Foreman, Inc., Langan Engineering & Environmental Services, Inc., Christopherhill Development, Inc., Koloa Pacific Construction, Inc., and TerraPacific Consultants, Inc. (collectively, "Defendants"), allege upon knowledge as to themselves and upon information and belief as to others, the following:

## I.    NATURE OF THE ACTION

1.    This is a civil action arising from environmental contamination caused by Defendants and by which ERE seeks cost recovery and declaratory judgment under sections 107(a) and 113(g)(2) of the federal Comprehensive Environmental Response, Compensation and Liability Act, as amended 42 U.S.C. §§ 9601-9675 ("CERCLA"), and for cost recovery and indemnification under section 25323 of the Carpenter-Presley-Tanner Hazardous Substances Account Act ("HSAA"), the state counterpart to CERCLA, Cal. Health & Safety Code §§ 25300-25395.45, the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202, and other pendent state common law environmental claims.

DOC. # DC-9837818 V.1

2.     Nearly a decade ago ERE began the process of renovating their property known as El Rancho Escondido (the "Ranch") on Santa Catalina Island by hiring an architectural firm to draw up plans for the Ranch.  ERE retained a civil engineering firm, Defendant Hall & Foreman, Inc. (now Defendant David Evans and Associates, Inc.) (collectively, "DEA"), to evaluate the conditions at the Ranch ahead of the start of construction.

3.     DEA subcontracted with a geotechnical engineering firm, Defendant Langan Engineering & Environmental Services, Inc. ("Langan") to conduct its own investigation and report on the soil conditions at the Ranch.  During its investigation, Langan identified the presence of naturally occurring asbestos ("NOA") in rock formations at the Ranch.  Langan called out the presence of NOA in its reports and detailed the steps that needed to be taken during construction activities to address the presence of NOA and to comply with the applicable regulations.  Langan's investigation was memorialized in a report entitled "Geotechnical Investigation for El Rancho Escondido Road Realignment and Proposed Reservoir" (the "2011 Langan Report").

4.     A couple of months after the 2011 Langan Report was prepared and issued, ERE began the process of hiring a construction management firm for the renovation of the Ranch.  ERE selected Defendant Christopherhill Development, Inc. ("CDI") due to its competitive pricing and prior construction experience on Santa Catalina Island, including knowledge of the challenges of overseeing a construction project on the Island.

5.     CDI then subcontracted with a geotechnical construction company, Defendant Koloa Pacific Construction, Inc. ("KPC"), to conduct the horizontal grading work at the Ranch.  After using Langan as the geotechnical engineer for the construction for approximately two years, ERE replaced Langan with Defendant TerraPacific Consultants, Inc. ("TCI").

/ / /

---

COMPLAINT

DOC. # DC-9837818 V.1

6.     In September 2015, ERE learned for the first time that NOA mitigation measures and regulatory requirements from the 2011 Langan Report—although clearly and explicitly set forth and incorporated by reference in the contracts, permits, and other project related authorizations authored by and issued to the Defendants—were summarily ignored.  ERE's subsequent investigation revealed that, as a result of the Defendants' acts and omissions, asbestos had been emitted into the atmosphere and dispersed over a significant portion of the Ranch. For well over a year, ERE halted construction while it addressed the NOA issue with the South Coast Air Quality Management District ("SCAQMD") and other environmental regulatory agencies.   ERE is currently working with an environmental consultant to craft a plan to remediate the NOA contamination at the Ranch and has recently hired new contractors who are just beginning the re-commence construction activity

7.     The Defendants' failures to implement the appropriate NOA mitigation measures in order to comply with the regulations and the resulting NOA contamination has cost ERE millions of dollars in investigation and related costs and will cost ERE millions of dollars more to remediate and monitor.

## II.   PARTIES

### A.   ERE

8.     Plaintiff E.R.E. Ventures, LLC is, and at all times mentioned herein was, a limited liability company existing under the laws of the state of Delaware and whose headquarters are located in Solvang, California.

9.     Plaintiff E.R.E. LLC is, and at all times mentioned herein was, a limited liability company existing under the laws of the state of Delaware and whose headquarters are located in Solvang, California.

10.    Plaintiff Kangaru Enterprises, LLC is, and at all times mentioned herein was, a limited liability company existing under the laws of the state of Delaware and whose headquarters are located in Solvang, California.

DOC. # DC-9837818 V.1

**B.** **Defendants**

11.    Defendant David Evans and Associates, Inc. is, and at all times mentioned herein was, a corporation duly incorporated and existing under the laws of the state of Delaware and whose headquarters are located in Portland, Oregon. Upon information and belief, Defendant David Evans and Associates, Inc. is the corporate successor to Defendant Hall & Foreman, Inc.

12.    Defendant Hall & Foreman, Inc. was a corporation duly incorporated and existing under the laws of the state of California and whose headquarters were located in Tustin, California.   Upon information and belief, Defendant Hall & Foreman, Inc. has been merged out and into Defendant David Evans and Associates, Inc.

13.    Defendant Langan Engineering & Environmental Services, Inc. is, and at all times mentioned herein, was a corporation duly incorporated and existing under the laws of the state of New Jersey and whose headquarters are located in Parsippany, New Jersey.

14.    Defendant Christopherhill Development, Inc. is, and at all times mentioned herein, was a corporation duly incorporated and existing under the laws of the state of California and whose headquarters are located in Del Mar, California.

15.    Defendant Koloa Pacific Construction, Inc. is, and at all times mentioned herein, was a corporation duly incorporated and existing under the laws of the state of California and whose headquarters are located in Poway, California.

16.    Defendant TerraPacific Consultants, Inc. is, and at all times mentioned herein, was a corporation duly incorporated and existing under the laws of the state of Nevada and whose headquarters are located in San Diego, California.

17.    ERE is ignorant as to the true names and capacities of the defendants sued fictitiously as DOES 1 through 10, inclusive, and therefore sue these

defendants by such fictitious names. ERE will amend this Complaint to allege their true names and capacities when ascertained, but is presently informed and believes that each of the fictitiously named defendants is an owner, member, or affiliate of a named Defendant with such unity of interest and ownership that the separate personalities between the Doe Defendant and the named Defendant no longer exist and that failure to disregard their separate identities would result in fraud or injustice.

## III.   JURISDICTION AND VENUE

18.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b), and pursuant to 28 U.S.C. § 1367 (conferring supplemental jurisdiction over a pendent state law claim). In addition, the Declaratory Relief Act, 28 U.S.C. § 2201 and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), authorize this Court to grant ERE declaratory relief.

19.   ERE brings this suit under the CERCLA, 42 U.S.C. § 9601-9675, as amended by Superfund Amendments and Reauthorization Act of 1986, Pub. L. 99-499; California's Carpenter-Presley-Tanner Hazardous Substances Account Act ("HSAA"), the state counterpart to CERCLA, Cal. Health & Safety Code §§ 25300-25395.45; and the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202. These claims arise out of the Defendants' acts and omissions which have caused the NOA contamination of the Ranch.

20.   Venue is proper in the United States District Court, Central District of California because a substantial part of the events or omissions giving rise to ERE's claims for relief occurred in the District.

## IV.   GENERAL ALLEGATIONS

### A.   ERE Business Entities Roles in Redevelopment of the Ranch

21.   Plaintiff E.R.E. Ventures, LLC's role in the redevelopment of the Ranch includes, among other roles, its contract with construction management

company Defendant Christopherhill Development, Inc. and its contract with geotechnical engineering firm Defendant TerraPacific Consultants, Inc.

22.     Plaintiff E.R.E. LLC's role in the redevelopment of the Ranch includes, among other roles, its ownership of the Ranch

23.     Plaintiff Kangaru Enterprises, LLC's role in the redevelopment of the Ranch includes its, among other roles, its contract with civil engineering firm, Defendant Hall & Foreman, Inc.

### B.     2011 Langan Report

24.     The 2011 Langan Report included, among other things, a section entitled "Naturally Occurring Asbestos."  The Report warned that "[n]aturally occurring asbestos was observed in the samples at the project site," and that California environmental regulations required construction mitigation measures for the NOA be implemented under an approved Asbestos Airborne Toxic Control Measure ("ATCM") program approved by the local air regulatory agency, the SCAQMD.

25.     NOA occurs in rocks and soil as a result of natural geological processes.  Human activities, such as construction, may disturb NOA-bearing rock or soil and release mineral fibers into the air, which may create environmental contamination.  As long as NOA is not released from rocks or soil or is properly managed during human activities, then it does not create environmental contamination.[1]

26.     NOA, is recognized as a "hazardous substance" as that term is defined under both Federal, 42 U.S.C. 9601(14), and California state law, Cal. Health & Safety Code § 25316.

---

[1] *See* U.S. Environmental Protection Agency, Naturally Occurring Asbestos: Approaches for Reducing Exposures, EPA 542-F-08-001 (March 2008) (http://semspub.epa.gov/work/HQ/175314.pdf).

7

COMPLAINT

27.    In light of the identification of NOA in the soils and precautions prescribed in the 2011 Langan Report, ATCM regulations require that control measures sufficient to demonstrate compliance with an approved ATCM program be implemented during construction where soil will be disturbed.  Specifically, the 2011 Langan Report outlines the following regulatory requirement:

> "Control measures must include a dust mitigation plan and follow the requirements for recordkeeping and reporting of geologic evaluations, air quality monitoring, and soil sampling in the vicinity of the property.  Guidelines from California Air Resources Board Asbestos ATCM for Construction, Grading, and Quarrying are provided in Appendix F."[2]

28.    The 2011 Langan Report and Rule 2002-07-29 thus described the actions required to address the NOA during the horizontal grading work at the Ranch in order to prevent environmental contamination and to comply with ATCM regulations.  These included the preparation of a dust mitigation plan ("DMP") pursuant to the ATCM regulation, obtaining approval of that DMP from the SCAQMD, and implementation of that DMP prior to the start of any construction or grading activity.

29.    Langan's recommended NOA mitigation measures were subsequently incorporated into almost every contract and geotechnical-related report that followed.

30.    Despite the systematic incorporation and reference to the 2011 Langan Report, and its ATCM requirements, into nearly every contract and report prepared by the Defendants in their work on redeveloping the Ranch for a period of approximately three and a half years, none of the Defendants implemented any

---

[2] Appendix F of the 2011 Langan Report contains a copy of California Air Resources Board Rule 2002-07-29 describing the required elements of an ATCM. *See* CARB Rule 2002-07-29.

COMPLAINT

DOC. # DC-9837818 V.1

measures to address the NOA, let alone the regulatorily required ATCM control measures, thereby causing and creating NOA contamination at the Ranch.

## B. DEA's Contract and Services Provided

31. On or about December 2, 2008, ERE, through Kangaru Enterprises, LLC, entered into its contract with civil engineering firm DEA (the "DEA Contract").

32. On or about November 19, 2010 and November 23, 2011, DEA and ERE, through Kangaru Enterprises, LLC, entered into two additional services contracts (the "DEA Additional Service Contracts").

33. Upon information and belief, DEA performed of the services outlined in the DEA Contract and DEA Additional Services Contracts. The relevant services DEA contracted to perform included the following:

    a. "[T]o provide civil engineering services necessary to complete a preliminary grading plan to be used by the Geotechnical consultant to layout and design the treatment facilities (i.e. septic tanks and drain fields. Also, [DEA] will develop an alignment study for a proposed relocation of El Rancho Escondido Road."

    b. "Perform an initial Site Visit (106), to be coordinated by [ERE]. [DEA] will send its project manager."

    c. "Prepare a Preliminary Site Grading/Drainage Plan…based on the Site Plan for the El Rancho Escondido renovation, Geotechnical Report, and Topographic Survey all of which will be provided by [ERE]…[t]his service item will include such steps as…[e]stablish the grading design criteria from agency standards, [ERE] and architect's input, the geotechnical consultant's findings/recommendations, and accessibility codes. This will include criteria for such parameters as minimum/maximum roadway grades and widths, cross-slopes,

DOC. # DC-9837818 V.1

drainage provision, hillside slopes, drain fields and septic tank locations, unsuitable or difficult soil and subsurface conditions."

d. "Prepare a 1"=30' scale Preliminary Grading Plan (203) based on refining the conceptual grading redlines and selected roadway alignment, as described above."

e. "Provide the Geotechnical consultant with the preliminary grading plan in a form that they can use to delineate the locations and sizes of the proposed waste water treatment and disposal facilities."

f. "Provide Preliminary Earthwork Calculations (227) for raw Cut and Fill Quantities based on the Preliminary Grading design.  Provide recommendations for on-site disposal of any excess cut."

g. "[DEA] will retain Langan Engineering to perform required Geotechnical Services, pursuant to [the Langan Contract]."

h. "Provide Geotechnical Services per [the Langan Contract]."

34.   The relevant provisions of the DEA Contract and DEA Additional Service Contracts include the following:

a. "[DEA] shall perform its services in accordance with generally accepted standards of professional practice in Southern California in effect at the time of performance."

b. "[DEA's] services will be performed for the benefit of [ERE] and not for any third-party beneficiary."

c. "Each party shall hold harmless and indemnify the other party from and against liability arising from the indemnifying party's negligent acts, errors, or omissions.  If other parties are liable in addition to the indemnifying party, the indemnifying party shall pay only an amount proportional to its degree of culpability."

/ / /

/ / /

COMPLAINT

DOC. # DC-9837818 V.1

### C.      Langan's Contract and Services Provided

35.     On or about November 22, 2010, on behalf of ERE, DEA subcontracted with geotechnical engineering firm Langan (the "Langan Contract").

36.     On or about October 21, 2011, Langan and ERE entered into Additional Services Contract (the "Langan Additional Services Contract").

37.     Upon information and belief, Langan performed of the services outlined in the Langan Contract and Langan Additional Services Contract.  The relevant services Langan contracted to perform included the following:

    a.  "Subsurface exploration by a backhoe is proposed to explore the site."

    b.  Laboratory testing will be performed on collected samples to determine physical and engineering properties of the soils and rocks within the proposed development area.  Testing is anticipated to consist of classification, maximum density/optimum moisture content, shear strength, gradation, and Atterberg limits."

    c.  "Geotechnical analysis on field and laboratory test data will be conducted…Conclusions and recommendations for the proposed grading improvements will be developed.  [Langan] will also evaluate the suitability of the excavated materials from the reservoir areas for reuse as compacted fill for roadways and other development areas."

    d.  "A report will be prepared for submittal to the County to address the geotechnical aspects of the proposed grading.  Six (6) hard copies and one (1) PDF on a CD will be submitted for [ERE's] distribution."

    e.  "Full time observation and testing during grading operations is required by the County of Los Angeles and will be performed by an engineering technician."

    f.  "Part time geologic mapping and observation of grading is required by the County of Los Angeles and will be performed by an engineering geologist."

COMPLAINT

DOC. # DC-9837818 V.1

g. "Project management, supervision and review by a soil engineer, and/or engineering geologist will be provided on an as-needed basis."

h. "Monthly in-grading reports are required by the County of Los Angeles."

i. Upon information and belief, on or about March 21, 2012, April 18, 2012, May 17, 2012, July 10, 2012, July 25, 2012, August 27, 2012, November 20, 2012, January 8, 2013, February 14, 2013, and February 20, 2013, Langan submitted monthly grading reports to the County of Los Angeles Department of Public Works ("LADPW"). Langan's monthly grading reports each provided that: "Based on our observations and testing described herein, it is [Langan's] judgement that the earthwork described herein was performed in accordance with…[the 2011 Langan Report]."

38. The relevant provisions of the Langan Contract and Langan Additional Service Contract include the following:

a. "L[angan]'s services will be performed, prepared, and presented in accordance with this Agreement and in a manner consistent with generally accepted professional engineering, surveying, geotechnical, environmental and geological standards ordinarily exercised by other professionals performing similar services under similar circumstances at the place and time the services are being performed."

b. "L[angan] shall exercise reasonable professional care in its efforts to comply with codes, regulations, laws, rules, ordinances, and such other requirements in effect as of the date of execution of this Agreement."

c. "L[angan] agrees to indemnify and hold harmless [ERE] and [ERE]'s parents, subsidiaries, affiliates, partners, officers, directors, shareholders, employees and agents for any and all claims, damage

COMPLAINT

DOC. # DC-9837818 V.1

obligations, liabilities, suits, demands and losses for personal injury and/or property damage including reasonable attorney's fees and all other expenses and disbursements, asserted by any third parties to the extent arising out of the negligent acts or omissions of L[angan] in the performance of its services under this Agreement."

**D.   CDI's Contract and Services Provided**

39.   On or about December 21, 2011, ERE, through E.R.E. Ventures, LLC, entered into its contract with construction management company CDI (the "CDI Contract").

40.   Upon information and belief, CDI performed of the services outlined in the CDI Contract.  The relevant services CDI contracted to perform included the following:

a. "[G]rading of an approximately ½ mile bypass road and the installation of cement treated base on the road[.]"

b. "[E]xcavation of the reservoir expansion and installation of a reservoir shell[.]"

c. "[C]rushing of all excavated rock[.]"

d. "Site visits to coordinate work and verify progress."

e. "Coordinate transportation of materials and equipment (barge to the island, and transportation therefrom to site)."

f. "Apply for and use commercially efforts to obtain all necessary governmental permits and approvals."

41.   The relevant provisions of the CDI Contract include the following:

a. "'Work' shall mean the labor and materials, or both, necessary to construct and complete the Project in accordance with the 'Contract Documents' as amended by 'Change Orders' (see paragraph 3.2 below).   The Work shall be done and materials furnished in accordance with the 'Contract Documents'."

DOC. # DC-9837818 V.1

b. "'Contract Documents' means this Agreement, the [DEA] plans dated February 1, 2011 (the 'Plans'), the [2011 Langan Report] and any Change Orders made under this Agreement."

c. "[CDI] agrees to furnish and transport all necessary labor, materials, tools, implements, and equipment, excepted as excluded by Exhibit A, required to perform and finish the Work completely in a workmanlike manner, to the reasonable satisfaction and approval of [ERE]…and in conformity with the Contract Documents, and all applicable state, county, and municipal laws, codes, and regulations."

d. "[CDI] shall use due care, skill, and diligence in performance of its obligations under this Agreement.  All work and services to be performed under this Agreement shall be done in a professional manner."

e. "[CDI] shall oversee the maintenance of all work areas in a clean and safe condition and shall promptly cause the removal or stockpiling of all site debris from the site."

f. [CDI]'s services will be performed by experienced individuals who exercise good judgment, according to established construction and safety practices.  All Work will be performed by or under the supervision of experienced professionals.  All employees will conduct themselves in a professional manner at all times."

g. "[CDI] shall properly coordinate with [ERE]…to make sure all governmental permits and approvals are in place before commencing the Work."

h. "[CDI] has made an independent investigation of the jobsite, is relying on the [2011 Langan Report] which is part of the Contract Documents as to the soil conditions under the jobsite, and has

COMPLAINT

DOC. # DC-9837818 V.1

considered all other conditions that might affect the progress of the Work, and has satisfied itself as to those conditions."

i.  "[CDI] guarantees that the Work done under this Agreement will conform to the Plans, will comply with Applicable Laws, and will be free from faulty materials or workmanship."

j.  "[CDI] shall indemnify and hold [ERE] harmless against and from any and all claims arising from the conduct, management, or performance of the Project, including, without limitation, any and all claims arising from any condition of the Project, or arising from: (a) any breach or default on the part of Contractor in performance of any covenant or agreement on its part to be performed pursuant to the terms of this Agreement, including without limitation the environmental covenants of Section 11.3; (b) any act of negligence of Contractor or any of its agent, servants, employees, subcontractors, or licensees; or (c) any accident, injury, or damage howsoever caused to any person, firm, or corporation…Such indemnity shall include any and all costs, reasonable counsel fees, expenses, and liabilities incurred in or about any such claim, action, or proceeding brought thereon, and if any action or proceeding be brought against [ERE], shall defend against such action or proceeding by counsel satisfactory to [ERE], unless such action or proceeding is defended by counsel for any carrier of public liability insurance provided herein…This indemnity is not limited by the limits of [CDI]'s insurance."

k.  "[CDI] shall comply with and give notice required by all Applicable Laws with respect to the performance of the Work, including without limitation wage and hour laws, nondiscrimination laws, and safety laws and provide information and training to all persons performing work as required or needed with respect to occupational safety and

health, hazardous materials, appropriate work practices, emergency procedures and protective equipment."

l.  "[CDI] shall not keep, use, dispose, transport, generate, or sell on or about the Project site, any materials now or hereafter designated as, or which are subject to regulation as, hazardous, toxic, dangerous, or harmful by any federal, state or law, regulation, statute or ordinance (herein after collectively referred to as 'hazardous materials'), in violation of any such law, regulation, statute, or ordinance, but in no case shall any such hazardous material be stored more than 90 days on the Project site."

m.  "[CDI] shall promptly notify [ERE] of all spills or releases of any hazardous substances which are otherwise required to be reported to any regulatory agency and pay the cost of cleanup."

n.  "[CDI] shall promptly notify [ERE] of all failures to comply with any federal, state, or local law, regulation, or ordinance; all inspections of the Project site by any regulatory entity concerning the same; all regulatory orders or fines; and al[l] responses or interim cleanup actions taken by or proposed to be taken by any governmental entity or private party on the Project site."

o.  "[CDI] shall protect from damage all existing conditions, including soils, structures, equipment, improvements, utilities, and vegetation at or near the Project site…"

p.  "[CDI] shall schedule, supervise, and coordinate the operations of all subcontractors.  No subcontracting of any of the Work shall relieve [CDI] from its responsibility for the performance of the Work in accordance with the Contract Documents or any other obligation of the Contract Documents."

---

DOC. # DC-9837818 V.1

q. "In the event of arbitration litigation between the parties, or if a party becomes involved in litigation because of wrongful acts of the other party, the court will award reasonable attorney fees to the prevailing or innocent party."

**E.   KPC's Contract and Services Provided**

42.    On or about January 11, 2012, on behalf of ERE, CDI subcontracted with sitework contractor KPC (the "KPC Contract").

43.    Upon information and belief, KPC performed of the services outlined in the KPC Contract.  The relevant services KPC contracted to perform included the following:

a. "Reservoir Excavation.  Excavation Of The Proposed Reservoir (Price Includes Rock Breaking)."

b. "Mass Earthwork.  Includes Removal And Recompaction Of Existing Topsoils, Keyways To Support Fill Slopes, Stockpiles Of Excess Material and Cut To Fil Achieve Proposed Grades Per Grading Plan."

c. "Crushing of Material.  Crush Excess Material Generated From Excavation To Produce Aggregate Products For Use On Site As Sand, Gravel, Base And/or DG.  This Includes Stockpiling Material On Project Location Within 800' (Approx. 16,000 TONS)."

d. "Placement of Base for Roads on Project.  Place And Compact 12" Of Class II Base On New Re-Aligned Road.  (53,000 SF)."

e. "Stockpile Excess Material.  Stockpile Excess Product (Approx. 13,000 TON) Per The Stockpile Locations Located On The Plan."

f. "Cement Treated Base (CTB).  Process, Mix, Water and Compact Cement Into Base Material to Create A 5% Cement Treated Base Material For The Roads On The Project."

DOC. # DC-9837818 V.1

44.    The relevant provisions of the KPC Contract include the following:

a. "[KPC] shall use due care, skill, and diligence in the performance of its obligations under this [KPC Contract].  All work and services to be performed under this [KPC Contract] shall be done in a professional manner.  [KPC] shall maintain all work areas in a clean and safe condition and shall promptly remove from the site all debris.  The aforementioned conditions and requirements are to be performed by experienced individuals who exercise good judgment, according to established construction and safety practices."

b. "[KPC] shall properly coordinate with [CDI] and its retained experts to make sure all governmental approvals are in place before commencing the work set forth herein."

c. "In the event that [KPC] wrongfully causes damage, during the course of the work performed under this [KPC Contract], to property of [ERE], or to other work on [ERE]'s site, [KPC] shall promptly remedy such damage and repair such damage or pay for the costs of repairing such damage…Repairs to facilities shall be made immediately after damage or alteration occurs, unless otherwise directed."

**F.    TCI's Contract and Services Provided**

45.    On or about March 7 2013, ERE, through E.R.E. Ventures, LLC, entered into its contract with geotechnical engineering firm TCI to replace Langan (the "TCI Contract").

46.    Upon information and belief, TCI performed of the services outlined in the TCI Contract.  The relevant services TCI contracted to perform included the following:

a. "Provide monthly grading reports to the County of Los Angeles, as needed."

COMPLAINT

DOC. # DC-9837818 V.1

b. Upon information and belief, on or about January 3, 2014, April 2, 2014, July 30, 2014, September 29, 2014, February 10, 2015, April 15, 2015, and August 15, 2015, TCI submitted monthly grading reports to the LADPW. TCI's monthly grading reports each provided assurances to LADPW that horizontal grading work at the Ranch was being done in compliance with the 2011 Langan Report.

47. The relevant provisions of the TCI Contract include the following:

a. "The services set forth in [the TCI Contract] will be accomplished in a timely, workmanlike, and professional manner by [TCI] personnel at the prices quoted."

b. "[TCI]'s services will be performed, its findings obtained, and its reports prepared in accordance with its proposal, and these General Conditions, and with the generally accepted principals and practices in performing its professional services. [TCI] will use that degree of care and skill ordinarily exercised under similar circumstances by members of its profession."

c. "If an action of whatsoever kind is taken by either party to interpret or enforce any provision hereof (whether or not arbitration or litigation is commenced), the non-prevailing party agrees to reimburse the prevailing party for all costs and expenses (including attorneys' fees) incurred in taking such action."

**G.   Discovery and Investigation of NOA Contamination at the Ranch**

48. On or about September 2015, after over three years of horizontal grading work moving, crushing, spreading, and stockpiling of rock and soils at the Ranch containing NOA, ERE learned for the first time that none of the Defendants had implemented the NOA mitigation measures prescribed by the 2011 Langan Report or complied with the relevant environmental regulations.

/ / /

DOC. # DC-9837818 V.1

49.   ERE immediately suspended construction activity and notified environmental regulators, including the SCAQMD, of the issue.  ERE also moved all personnel off the Ranch and, in agreement with the Santa Catalina Island Conservancy, closed El Rancho Escondido Road, which runs through the Ranch, to public access until the presence of NOA could be fully evaluated and necessary response and mitigation actions put in place.

50.   At a significant cost, ERE mobilized a crisis management team of environmental consultants, environmental attorneys, a public relations firm, specialized environmental cleaners, and other environmental trades to address the NOA contamination that had spread around the Ranch over the past three-plus years.

51.   ERE's environmental consultants concluded that the NOA contamination was caused by the fugitive dust emissions from the grading of roads, foundation grading and fill operations, and horizontal construction overseen and conducted by Defendants.

52.   While at the same time representing to ERE and the regulatory authorities that NOA mitigation measures were in place, Defendants were causing and creating the release and disposal of NOA at the Ranch.

53.   ERE has recently hired new contractors who are just beginning the re-commence construction activity.

54.   Since its discovery of Defendants' acts and omissions with respect to the NOA at the Ranch, ERE has worked and is working with environmental consultants, environmental attorneys, and the SCAQMD to ensure that all necessary and proper NOA mitigation measures are in place.

55.   ERE has incurred necessary response costs in excess of $2.8M and expects to incur further substantial necessary responses costs in addressing and remediating the NOA contamination at the Ranch.

/ / /

# V.   CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Cost Recovery under CERCLA – Against All Defendants)

56.   ERE hereby incorporates by reference the allegations in Paragraphs 1 through 55 of its Complaint as though fully set forth herein.

57.   Each of the Plaintiffs is a "person" within the meaning of CERCLA, 42 U.S.C. § 9601(21).

58.   Each of Defendants is a "person" within the meaning of CERCLA, 42 U.S.C. § 9601(21).

59.   The Ranch is a "facility" within the meaning of CERCLA, 42 U.S.C. § 9601(9).

60.   Defendants have caused "disposal," "release[s]," and threatened "release[s]" of "hazardous substance[s]" into the "environment" at the Ranch as those terms are defined in CERCLA, 42 U.S.C. §§ 9601(8), (14), (22), and (29).

61.   Each of the Defendants is a liable party under CERCLA § 107(a), 42 U.S.C. § 9607(a), because, upon information and belief, they operated at the Ranch at the time of disposal of hazardous substances and accepted hazardous substances for transport to disposal at or from the Ranch where there was a release, or threatened release, of a hazardous substance.

62.   ERE has incurred necessary costs of "response," as that term is used in CERCLA, 42 U.S.C. § 9601(25) and § 9607(a), which are consistent with the National Contingency Plan including, without limitation, costs to secure and limit access to the Property and to investigate the nature and extent of the hazardous substance contamination at the Property.

63.   Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), Defendants are strictly jointly and severally liable to ERE for all of its necessary costs of response in an amount to be proven at trial.

/ / /

DOC. # DC-9837818 V.1

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief under CERCLA – Against All Defendants)

64.    ERE hereby incorporates by reference the allegations in Paragraphs 1 through 63 of its Complaint as though fully set forth herein.

65.    ERE has and will continue to incur necessary costs of response within the meaning of CERCLA § 107(a), 42 U.S.C. § 9607(a), with respect to the Ranch. Those necessary costs of response include, without limitation, investigation, removal, and remedial action costs and other costs recoverable under CERCLA.

66.    Pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), ERE is entitled to a declaratory judgment that Defendants are strictly liable, jointly and severally, for the additional necessary costs of response that ERE will incur in responding to the disposal, release, and/or threatened release of hazardous substances at or from the Ranch.

## THIRD CLAIM FOR RELIEF

### (Cost Recovery and Indemnity under HSAA – Against All Defendants)

67.    ERE hereby incorporates by reference the allegations in Paragraphs 1 through 66 of its Complaint as though fully set forth herein.

68.    The HSSA, California Health & Safety Code § 25300 et seq., provides for an action for cost recovery, contribution, and indemnity for those costs from which any person who is a "responsible party" pursuant to California Health & Safety Code § 25323.5.

69.    Upon information and belief, each Defendant is a "person" pursuant to California Health & Safety Code § 25319.

70.    Defendants are each a "responsible party" pursuant to California Health & Safety Code § 25323.5 because each is a person described in CERCLA § 107(a), 42 U.S.C. § 9607(a) since, upon information and belief, Defendants were each an operator at the Ranch at the time of disposal of hazardous substances and

22

COMPLAINT

Defendants each accepted hazardous substances for transport to disposal from the Ranch where there was a release, or threatened release, of a hazardous substance.

71.    The Ranch is a "site" pursuant to California Health & Safety Code § 2523.9 because it is a "facility" pursuant to CERCLA § 101(9), 42 U.S.C. § 9601(9).

72.    ERE has incurred necessary "removal" and "remedial action" costs within the meaning of the HSAA, California Health & Safety Code §§ 25322, 25323, and 25363(e).

73.    Defendants are liable for all necessary removal and remedial action costs incurred by ERE under the HSAA in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract – Against All Defendants)

74.    ERE hereby incorporates by reference the allegations in Paragraphs 1 through 73 of its Complaint as though fully set forth herein.

75.    ERE intends this Complaint, as well as the previously served demand letters, to be notification to Defendants that ERE tenders to them the obligation to defend and indemnify ERE and hold ERE harmless pursuant to the terms of their respective agreements with ERE.

76.    DEA and ERE, with capacity and each offering consideration, entered into the DEA Contract, which is a valid and binding contract.  ERE has performed all of its obligations under the DEA Contract, except as excused by DEA's conduct or waiver.  DEA has materially breached the DEA Contract by:

    a.  Failing to "perform its services in accordance with generally accepted standards of professional practice in Southern California in effect at the time of performance."

    b.  Failing to "hold harmless and indemnify the other party from and against liability arising from the indemnifying party's negligent acts, errors, or omissions.  If other parties are liable in addition to the

DOC. # DC-9837818 V.1

indemnifying party, the indemnifying party shall pay only an amount proportional to its degree of culpability."

77.    Langan and ERE, with capacity and each offering consideration, entered into the Langan Contract, which is a valid and binding contract.  ERE has performed all of its obligations under the Langan Contract, except as excused by Langan's conduct or waiver.  Langan has materially breached the Langan Contract by:

    a.  Failing to apply "the generally accepted standard of care and skill ordinarily exercised by professional performing similar services under similar circumstances at the place and time the services" was performed.

    b.  Failing to "exercise reasonable professional care…to comply with the codes, regulations, laws, rules, ordinances".

    c.  Failing to indemnify and hold harmless ERE "for any and all damage obligations, liabilities, judgments, and losses for personal injury and/or property damage including reasonable attorney's fees and other expenses and disbursements…".

78.    CDI and ERE, with capacity and each offering consideration, entered into the CDI Contract, which is a valid and binding contract.  ERE has performed all of its obligations under the CDI Contract, except as excused by CDI's conduct or waiver.  CDI has materially breached the CDI Contract by:

    a.  Failing to perform work in conformance with "Contract Documents" because "Contract Documents" expressly includes compliance with the regulations set forth in the 2011 Langan Report.

    b.  Failing to perform work in a workmanlike manner to the reasonable satisfaction of ERE and in conformance with all applicable state, county, and municipal laws.

DOC. # DC-9837818 V.1

c. Failing to use "due care, skill, and diligence in performance of its obligations" under the CDI Contract.

d. Failing to independently investigate the jobsite or understand the contents of the 2011 Langan Report.

e. Failing to indemnify and hold harmless ERE for "any breach on the part of the [CDI's] performance of any covenant or agreement…including without limitation the environmental covenants in Section 11.3".

f. Failing to indemnify and hold harmless ERE for "any act or negligence of [CDI] or any of its agents, servants, employees, subcontractor of licensees".

g. Failing to comply with safety laws, including laws dealing with occupational safety and health and hazardous materials.

h. Failing its duty of responsibility not to keep, use, dispose, transport or generate hazardous waste.

79.    KPC and ERE, with capacity and each offering consideration, entered into the KPC Contract, which is a valid and binding contract.  ERE has performed all of its obligations under the KPC Contract, except as excused by KPC's conduct or waiver.  KPC has materially breached the KPC Contract by:

a. Failing to use "due care, skill, and diligence in performance of its obligations" under the KPC Contract.

b. Failing to coordinate with Construction Manager to ensure all necessary government approvals in place before commencing work.

c. Failing to indemnify and hold harmless from all claims, including "special, general and consequential damages, court costs, and all other reasonable attorney's fees associated with the settlement of a claim…"

COMPLAINT

DOC. # DC-9837818 V.1

80.     TCI and ERE, with capacity and each offering consideration, entered into the TCI Contract, which is a valid and binding contract.  ERE has performed all of its obligations under the TCI Contract, except as excused by TCI's conduct or waiver.  TCI has materially breached the TCI Contract by:

a.  Failing to perform services "with generally accepted principles and practices in performing its professional services."

b.  Failing to "use that degree of care and skill ordinarily exercised under similar circumstances by members of its profession."

c.  Failing to "reimburse the prevailing party for all costs and expenses (including attorneys' fees) incurred in taking such action."

81.     As a direct and proximate result of Defendants' breaches of their respective contracts, ERE has suffered extensive damages including, without limitation, loss of use of the Ranch and response costs to address NOA contamination caused by Defendants, all in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Express Indemnity – All Defendants Except KPC)

82.     ERE hereby incorporates by reference the allegations in Paragraphs 1 through 81 of its Complaint as though fully set forth here.

83.     ERE intends this Complaint, as well as the previously served demand letters, to be notification to Defendants that ERE tenders to them the obligation to defend and indemnify ERE and hold ERE harmless pursuant to the terms of their respective agreements with ERE.

84.     The Standard Provisions section of the DEA Contract and the DEA Additional Services Contracts provides "Each party shall hold harmless and indemnify the other party from and against liability arising from the indemnifying party's negligent acts, errors, or omissions.  If other parties are liable in addition to the indemnifying party, the indemnifying party shall pay only an amount proportional to its degree of culpability."

DOC. # DC-9837818 V.1

85.    The General Terms and Conditions sections of the Langan Contract and the Langan Additional Services Contract provides "L[angan] agrees to indemnify and hold harmless [ERE] and [ERE]'s parents, subsidiaries, affiliates, partners, officers, directors, shareholders, employees and agents for any and all claims, damage obligations, liabilities, suits, demands and losses for personal injury and/or property damage including reasonable attorney's fees and all other expenses and disbursements, asserted by any third parties to the extent arising out of the negligent acts or omissions of L[angan] in the performance of its services under this Agreement."

86.    The Insurance, Indemnity, and Waiver of Subrogation section of the CDI Contract provides "[CDI] shall indemnify and hold [ERE] harmless against and from any and all claims arising from the conduct, management, or performance of the Project, including, without limitation, any and all claims arising from any condition of the Project, or arising from: (a) any breach or default on the part of Contractor in performance of any covenant or agreement on its part to be performed pursuant to the terms of this Agreement, including without limitation the environmental covenants of Section 11.3; (b) any act of negligence of Contractor or any of its agent, servants, employees, subcontractors, or licensees; or (c) any accident, injury, or damage howsoever caused to any person, firm, or corporation…Such indemnity shall include any and all costs, reasonable counsel fees, expenses, and liabilities incurred in or about any such claim, action, or proceeding brought thereon, and if any action or proceeding be brought against [ERE], shall defend against such action or proceeding by counsel satisfactory to [ERE], unless such action or proceeding is defended by counsel for any carrier of public liability insurance provided herein…This indemnity is not limited by the limits of [CDI]'s insurance."

87.    The General Conditions section of the TCI Contract provides "If an action of whatsoever kind is taken by either party to interpret or enforce any

provision hereof (whether or not arbitration or litigation is commenced), the non-prevailing party agrees to reimburse the prevailing party for all costs and expenses (including attorneys' fees) incurred in taking such action."

88.   ERE has been and will be damaged as a proximate result of Defendants' use of the Ranch; the conduct of Defendants' in providing their services; and/or activity, work and/or things done, permitted and/or suffered by Defendants in or about the Ranch.  This includes, without limitation, Defendants' releases and disposal of hazardous substances and other contaminants at the Ranch; Defendants' failure to restore the Ranch, including buildings and other improvements, to the condition in which Defendants received it; ERE's damages as a result of their inability to redevelop the Ranch due to Defendants' conduct; and ERE's costs and damages addressing the NOA contamination.

89.   ERE has incurred costs to respond to Defendants' releases and disposal of hazardous substances and other contaminants at the Ranch; costs to address Defendants' failure to restore the Ranch, including buildings and other improvements, to the condition in which Defendants received it; ERE's damages as a result of their inability to redevelop the Ranch due to Defendants' conduct; and ERE's costs and damages addressing the NOA contamination.

90.   ERE has necessarily and reasonably incurred attorneys' fees and other costs as a result of Defendants' use of the Ranch, conduct of its business and/or activity, work and/or things done, permitted and/or suffered by ERE at the Ranch.

91.   ERE has performed all the conditions and obligations to be performed under the various contracts with Defendants.

92.   By reason of the foregoing, ERE is entitled to be reimbursed and indemnified by Defendants for all costs, including attorneys' fees and other costs, incurred and to be incurred by ERE in connection with contamination of the Ranch, Defendants' failure to restore the Ranch to the condition in which

COMPLAINT

DOC. # DC-9837818 V.1

Defendants received it, and ERE's inability to develop the Ranch due to Defendants' conduct.

## SIXTH CLAIM FOR RELIEF

### (Private Nuisance – Against All Defendants)

93.     ERE hereby incorporates by reference the allegations in Paragraphs 1 through 92 of its Complaint as though fully set forth herein.

94.     ERE owns the Ranch.

95.     Defendants have occupied, used, and operated at the Ranch.

96.     Upon information and belief, by virtue of the release of NOA contamination as alleged herein during Defendants' occupation, use, and operation at the Ranch, Defendants created or contributed to conditions that have been and are a substantial and unjustifiable interference with ERE's free and peaceful use and enjoyment of the Ranch.

97.     Upon information and belief, the release of NOA contamination at the Ranch occurred as a direct and proximate result of Defendants' occupation, use, and operation at the Ranch and/or their failures to prevent such releases and disposal.

98.     Despite the fact that Defendants knew or should have known that their occupation, use, and operations at the Ranch directly and proximately caused releases and disposal of NOA contamination at the Ranch, Defendants maintained the Ranch in a contaminated condition and failed to abate the contamination.

99.     As a proximate and foreseeable result of the nuisance created by Defendants, ERE has been and will be damaged in that Defendants' conduct has interfered with ERE's free use and enjoyment of the Ranch including, without limitation, redevelopment of the Ranch without the contamination, and other uses.

100.   ERE is entitled to an order requiring Defendants to abate their nuisance by removing the NOA contamination at the Ranch to allow for its unrestricted use, including the redevelopment of the Ranch.  To the extent such

DOC. # DC-9837818 V.1

abatement is not possible or Defendants refuse to conduct such abatement, ERE is entitled to all damages arising from the interference with its use and enjoyment of the Ranch, in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (Trespass – Against All Defendants)

101.   ERE hereby incorporates by reference the allegations in Paragraphs 1 through 100 of its Complaint as though fully set forth herein.

102.   ERE owns the Ranch.

103.   Upon information and belief, Defendants and/or their agents, contractors, or employees have intentionally, recklessly, and/or negligently caused NOA contamination to be released at the Ranch.  That contamination remains at, on, and around the Ranch.  These actions constitute a trespass.

104.   At all relevant times herein, Defendants had a duty not to permit or allow the creation or continuance of such trespass.  Defendants violated this duty by allowing these releases and disposal to occur and/or failing to prevent these releases and disposal.

105.   Defendants were not authorized to release NOA contamination onto or at the Ranch.

106.   The releases onto and at the Ranch have constituted and continue to constitute an intrusion which ERE's protected interest in exclusive use and possession of the Ranch.

107.   As a proximate result of Defendants' trespasses, the Ranch has been damaged.  ERE has been and continues to be damaged because Defendants' trespasses have contaminated the Ranch, including soil and structures at the Ranch.  ERE has incurred and will incur costs associated with the investigating and characterizing the nature and extent of, and otherwise responding to, the NOA contamination at the Ranch.  ERE has been and will continue to be damaged because Defendants' trespasses have interfered and continue to interfere with

COMPLAINT

DOC. # DC-9837818 V.1

ERE's free use and enjoyment of the Ranch including, without limitation, redevelopment of the Ranch without the contamination, and other uses, causing damages in an amount to be proven at trial.

108.   ERE is entitled to an order requiring Defendants to cease their trespass by removing the NOA contamination at the Ranch to allow for its unrestricted use.  To the extent such removal is not possible or Defendants refuse to conduct such removal, ERE is entitled to an aware in the amount of the diminution in value of the Ranch resulting from the presence of the NOA contamination, in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### (Negligence – Against All Defendants)

109.   ERE hereby incorporates by reference the allegations in Paragraphs 1 through 108 of its Complaint as though fully set forth herein.

110.   Defendants owed ERE a legal duty to exercise due care so that ERE's interest in the Ranch would not be damage, injured, or otherwise negatively affected.

111.   Upon information and belief, Defendants failed to exercise due care in the use, storage, treatment, transportation, release, and/or disposal of the NOA, thereby breaching Defendants' duty to ERE.  As a result, NOA contamination has been released and disposed at the Ranch.

112.   Upon information and belief, Defendants failed to exercise due care by taking the steps necessary to mitigate, abate, contain, and/or remediate the NOA contamination when they had a duty to ERE to do so, thereby breaching their duty of care to ERE.

113.   Defendants failed to exercise due care by warning or otherwise notifying ERE that Defendants' NOA contamination impacted, or may have impacted, the Ranch, thereby breach their duty of care to ERE.

DOC. # DC-9837818 V.1

114.   As a direct and proximate result of Defendants' breaches of their duties of due care to ERE as set forth above, NOA contamination has and continues to damage, injure, or otherwise negatively affect the Ranch, causing damages to ERE in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### (Equitable Indemnity – Against All Defendants)

115.   ERE hereby incorporates by reference the allegations in Paragraphs 1 through 114 of its Complaint as though fully set forth herein.

116.   In the event liability should be established in this action or in any administrative or regulatory action based on the NOA contamination alleged in this Complaint, whose liability is expressly denied, ERE alleges on information and belief that such liability will arise wholly or partly by reason of the conduct of Defendants, and/or that Defendants are jointly liable for said liability.  Defendants, and each of them, are therefore, bound and obligated to defend, indemnify and hold harmless ERE from and against any and all claims, losses, damages, attorneys' fees, judgments, fines, penalties, and settlement expenses incurred, or to be incurred, in this action by ERE.

117.   ERE intends this Complaint, as well as the previously served demand letters, to be notification to Defendants that ERE tenders to them the obligation to defend and indemnify ERE and hold ERE harmless.

118.   ERE has necessarily retained legal counsel at ERE's sole cost and expense to prepare, file and prosecute the claims set forth herein.   ERE has incurred, and will continue to incur, liability for attorneys' fees and costs and, in the prosecution of these claims, a sum which is presently not ascertained but will be proven at trial.

119.   ERE is entitled to indemnity from Defendants for all such monies expended and to be expended by ERE to investigate, mitigate, and remediate the NOA contamination at the Ranch, and for all other damages incurred by ERE.

DOC. # DC-9837818 V.1

## **TENTH CLAIM FOR RELIEF**

### **(Declaratory Relief under Declaratory Relief Act – Against All Defendants)**

120.   ERE hereby incorporates by reference the allegations in Paragraphs 1 through 119 of its Complaint as though fully set forth herein.

121.   Actual legal controversies now exist between ERE, on the one hand, and Defendants, on the other hand, regarding the NOA contamination at the Ranch. ERE therefore seeks a judicial declaration of its rights, duties, and obligations with respect to Defendants, and those of Defendants as follows:

      a.  that under the DEA Contract, Langan Contract, CDI Contract, KPC Contract, and TCI Contract, Defendants are obligated to remediate the Ranch so that it can be used in an unrestricted manner;

      b.  that under the DEA Contract, Langan Contract, CDI Contract, KPC Contract, and TCI Contract, Defendants are obligated to defend and indemnify ERE and hold ERE harmless for the NOA contamination; and

      c.  if (1) any claim, action, or proceeding is brought against ERE in connection with the NOA contamination at the Ranch, (2) ERE is the subject of any future governmental or agency orders requiring the investigation, cleanup, and/or abatement of the NOA contamination at the Ranch, or (3) any future claim, action, or proceeding is brought or government or agency order issued against ERE arising from Defendants' services at the Ranch, the conduct of Defendants' businesses, and/or activity, work and/or things done, permitted and/or suffered by Defendants in or about the Ranch or elsewhere: that ERE is entitled to a complete defense and indemnity under the terms of the Defendants' Contracts.

122.   Upon information and belief, Defendants deny each of the foregoing contentions.

DOC. # DC-9837818 V.1

123.   A declaratory judgment is thus necessary and appropriate and in the interest of justice in order so that ERE may ascertain its rights and duties and to avoid a multiplicity of overlapping judicial proceedings in multiple forums with the potential for grading inconsistent relief.

## VI.   PRAYER FOR RELIEF

WHEREFORE, ERE prays for judgment as follows:

### FIRST CLAIM FOR RELIEF

**(Cost Recovery under CERCLA – Against All Defendants)**

a.      For strict joint and several damages under CERCLA § 107(a), 42 U.S.C. § 9607(a), for all response costs and other recoverable costs, including without limitation recoverable costs and fees (including attorneys' fees), that ERE has incurred or will incur, including but not limited to costs of investigation and remediation, in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF

**(Declaratory Relief under CERCLA – Against All Defendants)**

a.      For a declaration pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), that Defendants are strictly jointly and severally liable to ERE for all response costs incurred at or with respect to the Ranch including, without limitation, investigation and remediation costs, and for such judgment to be binding in any subsequent action or actions to recover additional response costs incurred at or with respect to the Ranch.

### THIRD CLAIM FOR RELIEF

**(Cost Recovery and Indemnity under HSAA – Against All Defendants)**

a.      For cost recovery and indemnity from Defendants under HSAA for all removal and remedial action costs ERE has incurred and will incur, in an amount to be proven at trial.

/ / /

/ / /

DOC. # DC-9837818 V.1

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract – Against All Defendants)

a.      For damages including, without limitation, costs and fees ERE has incurred and will incur in the investigation and remediation of the NOA contamination at the Ranch, costs to restore the Ranch to the condition in which Defendants received it (ordinary wear and tear excepted), loss of use of the Ranch, and diminution in the Ranch value due to NOA contamination and any restriction on future use of the Ranch.

b.      For an award of attorneys' fees and costs incurred.

## FIFTH CLAIM FOR RELIEF

### (Express Indemnity – Against All Defendants Except KPC)

a.      For indemnification and reimbursement by Defendants for the damages and losses incurred and to be incurred by ERE in connection with the NOA contamination at the Ranch from any cause including, without limitation, investigation and remediation of the Ranch, loss of use of the Ranch, diminution in the Ranch value due to the NOA contamination and any restriction on the future use of the Ranch, costs and damages incurred and to be incurred by ERE in coordinating with the SCAQMD and any future orders or directives, any other claims, orders, or directives that may arise which are subject to Defendants' defense and indemnity of ERE, all in an amount to be proven at trial.

## SIXTH, SEVENTH, AND EIGHTH CLAIMS FOR RELIEF

### (Private Nuisance, Trespass, and Negligence – Against All Defendants)

a.      For damages including, without limitation, costs and fees ERE has incurred and will incur in the investigation and remediation of the NOA contamination at the Ranch, ERE's loss of use of the Ranch, and diminution in Ranch value due to NOA contamination and any restriction on the future use of the Ranch, all in an amount to be proven at trial.

COMPLAINT

DOC. # DC-9837818 V.1

b.      For an order declaring that Defendants' contamination of the Ranch is a nuisance about which ERE was not on notice until September 2015 and directing Defendants to abate that continuing nuisance or pay ERE damages for diminution in Ranch value to the extent the nuisance cannot or will not be abated.

c.      For an order declaring that Defendants' contamination of the Ranch is a trespass about which ERE was not on notice until September 2015 and directing Defendants to abate that continuing trespass.

## NINTH AND TENTH CLAIMS FOR RELIEF

### (Equitable Indemnity and Declaratory Relief under the Declaratory Relief Act – Against All Defendants)

a.      For a declaration that: (1) Defendants are obligated to remediate the NOA contamination at the Ranch so that it can be used in an unrestricted manner; (2) under their respective contracts, Defendants are obligated to defend and indemnify ERE and hold ERE harmless for costs and damages ERE has incurred and will incur in addressing the NOA contamination; and (3) if (a) any claim, action, or proceeding is brought against ERE in connection with the NOA contamination at the Ranch, (b) ERE is the subject of any future governmental or agency order or directive requiring investigation, cleanup, and/or abatement of the NOA contamination at the Ranch, or (c) any future claim, action, or proceeding is brought or government or agency order issue against ERE arising from Defendants' contamination of the Ranch, and/or activity, work and/or things done, permitted and/or suffered by Defendants in or about the Ranch or elsewhere: that ERE is entitled to a complete defense and indemnity under the terms of Defendants' Contracts.

/ / /

/ / /

/ / /

/ / /

COMPLAINT

1       As required by Local Rule 38-1, ERE hereby demands a jury trial.

2

3  DATED:     February 27, 2017     STEPTOE & JOHNSON LLP

4

5                     By:  *Christopher W. Smith*

6                        CHRIS M. AMANTEA

7                        ANTHONY G. HOPP

8                        CHRISTOPHER W. SMITH

Attorneys for Plaintiffs E.R.E. VENTURES, LLC, E.R.E. LLC, and KANGARU ENTERPRISES, LLC d/b/a RUSACK VINEYARDS d/b/a SANTA CATALINA ISLAND VINEYARDS

---

37

**COMPLAINT**

DOC. # DC-9837818 V.1